IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THE BOBRICK CORPORATION, | : | |
| BOBRICK WASHROOM EQUIPMENT, INC. | : | |
| THE HORNYAK GROUP, INC. | : | |
| Plaintiffs | : | |
| | : | |
| v. | : | 3:CV-07-1521 |
| | : | (JUDGE VANASKIE) |
| SANTANA PRODUCTS, INC., SANTANA | : | |
| PRODUCTS LIQUIDATING TRUST, | : | |
| MICHAEL T. LYNCH, SR., MICHAEL T. | : | |
| LYNCH, JR., JOHN A. CARNEY, JAMES | : | |
| M. GAVIGAN, WILLIAM E. | : | |
| JACKSON, ESQ. | : | |
| Defendants | : | |

MEMORANDUM

The Bobrick Corporation and its sales agencies have assiduously sought to seek compensatory and punitive relief from Santana Products, Inc., ("Santana"), its officers, and attorneys for having brought unfair competition litigation against them in the mid-1990s. One of those efforts played out in the federal courts in New York, with the Eastern District of New York concluding that claims brought against Sylvester & Assoc., Ltd., ("Sylvester"), a Bobrick captive sales representative, were neither frivolous nor brought in bad faith. The New York litigation culminated with a finding by the Court of Appeals for the Second Circuit that Sylvester's appeal from the denial of its request for counsel fees, pursued by the same attorney who has represented Bobrick throughout the entire course of this saga, was not

only frivolous, but also replete with misrepresentations so as to merit an award of double costs and reasonable counsel fees to Santana.  See Santana Prods., Inc. v. Sylvester & Assoc., Ltd., 98-CV-6721, 2006 U.S. Dist. LEXIS, 98045 (E.D.N.Y. Nov. 8, 2006), aff'd, 279 Fed.Appx. 42 (2d Cir. 2008).[1]

The second effort to recoup the fees incurred in defending against Santana's unfair competition action was brought by counsel representing Bobrick in this matter on behalf of another captive sales representative, Vogel Sales Company ("Vogel"), in the Pennsylvania state court system.  That case resulted in the dismissal of claims identical to those presented here on preliminary objections, a result summarily affirmed by the Pennsylvania Superior Court, with the Supreme Court of Pennsylvania denying allowance of appeal.  See Vogel Sales Co. v. Santana Prods., Inc., 2005 CV 5085 (Lackawanna County, May 23, 2007), aff'd mem., 963 A.2d 581 (Pa. Super. 2008) app. denied, 973 A.2d 412 (Pa. 2009).

This is the third effort by Bobrick and another of its captive sales agencies, The Hornyak Group, Inc. ("Hornyak"), to obtain redress for having been sued by Santana.  The statutory malicious use of civil proceedings and common law abuse of process claims asserted in this case, the same causes of action dismissed by the Pennsylvania courts in the Vogel case, are equally without legal foundation.  Accordingly, the Motion to Dismiss the

---

[1] The Order of the Court of Appeals for the Second Circuit imposing costs and reasonable attorneys' fees on Sylvester is found on the electronic docket in the Second Circuit under Docket No. 06-5615-CV.

First Amended Complaint (Dkt. Entry 112) will be granted.[2]

## I. BACKGROUND

### A. The Parties

Plaintiffs Bobrick and Bobrick Washroom Equipment, Inc. (collectively "Bobrick") are California corporations engaged in the business of manufacturing and selling toilet partitions from solid phenolic materials as well as from laminated plastic over particle board core. (Amended Complaint, Dkt. Entry 96, at ¶ 9).  Hornyak is a Delaware Corporation that worked as a sales representative for Bobrick in marketing Bobrick's toilet partitions in Pennsylvania, New Jersey and Delaware.[3]  (Id. at ¶ 6)

Santana, a Virginia corporation with its headquarters in Scranton, Pennsylvania, was a competitor of Bobrick in the toilet partition market.  Santana's toilet partitions were manufactured from a material different than the materials used by Bobrick.  Specifically, Santana sold high density polyethylene ("HDPE") toilet partitions.  (Id. at ¶¶ 9-11.)

---

[2]  For the convenience of the reader of this Order in electronic format, hyperlinks to the Court's record and to authority cited herein have been inserted.  The Court accepts no responsibility for, and does not endorse, any product, organization, or content at any hyperlinked site, or at any site to which that site might be linked.  The Court accepts no responsibility for the availability or functionality of any hyperlink.  Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.

[3] Plaintiffs invoke this Court's limited subject matter jurisdiction on the basis of diversity of citizenship as authorized by 28 U.S.C. § 1332.

During most of the relevant time frame, Santana was owned and operated by Defendant Michael T. Lynch, Sr. (Id. at ¶¶ 16-20.)  Mr. Lynch's son, Defendant Michael T. Lynch, Jr., is alleged to have been "a member of the management control group responsible for continuing the underlying baseless litigation." ("Id. at ¶ 22.)  Defendants John A. Carney and James M. Gavigan are also alleged to have been members of the Santana "management control group" responsible for initiating and continuing the underlying litigation.  Those Defendants who are members of the "Santana management control group" are citizens of Pennsylvania.[4]  Defendant William E. Jackson was the lead attorney for Santana in the litigation that serves as the predicate for this action.[5]   (Id. at ¶¶ 28-30.)

B.  Santana's 1994 Litigation

On November 30, 1994, Santana commenced an action against the Toilet Partition Manufacturer's Council ("TPMC") and eleven TPMC members who manufactured and sold

---

[4] Also named as a Defendant is Santana Products Liquidating Trust, the vehicle by which the assets and/or liabilities of Santana allegedly "retained by the Lynch Family, including those relating to the underlying case against Hornyak and Bobrick, after substantially all of the assets of Santana were sold to Winston Partners in November, 2004," are held.  (Amended Complaint, Dkt. Entry 96, at ¶ 13.)

[5] Plaintiffs have moved for leave to file a second amended complaint that, inter alia, would add Defendants Gerald J. Butler, Esq., local counsel for Santana in the underlying litigation, and Laminations, Inc., another business entity owned and controlled by the Lynch family.  In light of the conclusion that Plaintiffs cannot present a viable action for malicious use of civil process or abuse of process arising out of the conduct of the underlying litigation, the motion for leave to file a second amended Complaint (Dkt. Entry 163) will be denied.

toilet partitions.  (Amended Complaint, Dkt. Entry 96, at ¶ 40.)  The TPMC members sued in

the 1994 litigation made toilet partitions from sold phenolic core and plastic laminate.

Formica Corporation ("Formica"), then the world's largest manufacturer of solid phenolic

core and plastic laminate, was also a member of the TPMC and a defendant in the 1994

action.  Santana alleged that Formica, the TPMC, and its members named in the 1994

lawsuit had engaged in a concerted false advertising campaign that sought to depict toilet

partitions made of HDPE, like Santana's products, to be a fire hazard.  Formica and another

member of the TPMC had produced a videotape, which, according to Santana, falsely

depicted Santana's HDPE partitions as flammable.  See Santana Prods., Inc. v. Bobrick

Corp., 249 F. Supp. 2d, 463, 475 (M.D. Pa. 2003), aff'd in part and rev'd in part, 401 F.3d

123 (3d Cir.), cert. denied, 546 U.S. 1031 (2005).  The Formica videotape was used by

members of the TPMC to dissuade architects and others responsible for preparing building

specifications from sanctioning HDPE toilet partitions.  Santana asserted violations of

Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2 and Section 43 of the Lanham

Act, 15 U.S.C. § 1125, as well as tortious interference with prospective contractual

relationships.  Neither Bobrick nor any of its captive sales agencies were named as

defendants in the 1994 litigation.

On January 27, 1995, less than two months after the 1994 TMPC litigation was

brought, the parties reached a settlement.  (Amended Complaint, Dkt. Entry 96, at ¶ 42.)

5

Santana received a payment in excess of $800,000 plus an agreement by the named

defendants to discontinue use of the Formica videotape.[6]

C.  The Underlying Litigation

On October 1, 1996, Santana filed its unfair competition action against Bobrick along

with three of its architectural sales representatives, Hornyak, Vogel, and Sylvester (the

"Underlying Litigation").  The 1996 litigation advanced the same four causes of action that

had been presented two years earlier in the TPMC case: violations of sections 1 and 2 of

the Sherman Antitrust Act and section 43(a) of the Lanham Act, plus tortious interference

with prospective contractual advantage.[7]  (Amended Complaint, Dkt. Entry 96, at ¶ 47.)

The Underlying Litigation was docketed to No. 3:CV-96-1794, and assigned to the

_____

[6] The Amended Complaint alleges that Formica paid the bulk of the settlement
amount, with the other individual manufacturers paying only $5,000 each.  (Am. Compl.,
Dkt. Entry 96, at ¶ 43.)  At oral argument on Defendants' Motion to Dismiss the original
complaint, counsel for Santana represented that Formica paid $750,000.  (Tr. of June 27,
2008 Oral Argument, Dkt. Entry 66, at 6.)

[7] By Memorandum and Order dated July 2, 1998, Sylvester was dismissed from the
Underlying Litigation for lack of personal jurisdiction.  Santana Prods., Inc. v. Bobrick
Washroom Equip., Inc., 14 F. Supp. 2d 710 (M.D. Pa. 1998).  Santana then brought
litigation against Sylvester in the Eastern District of New York, docketed to No. 9:98-CV-
06721.  The Eastern District of New York granted Sylvester's motion for partial judgment on
the pleadings, dismissing the claim asserted under § 2 of the Sherman Act while denying the
motion to the extent that it sought dismissal of the Sherman Act § 1 and Lanham Act
claims.  Santana Prods., Inc. v. Sylvester & Assocs., Ltd., 121 F. Supp. 2d 729 (E.D.N.Y.
1999).  Thereafter, the litigation in the Eastern District of New York was stayed pending the
outcome of the related proceedings in this Court.

undersigned.[8]  With the concurrence of the parties, a Special Master was appointed to preside over discovery, which proved to be contentious, protracted, and expensive.  After the deposition of nearly 200 witnesses in 22 states, review of hundreds of thousands of pages of documents, exchanges of massive amounts of electronically stored information, and expert witness discovery, all parties moved for summary judgment.[9]

In a comprehensive opinion that spans more than 75 pages in the Federal

---

[8] Bobrick joined Formica as a third-party defendant, asserting that it had been persuaded by Formica to use the videotape that allegedly falsely depicted HPDE as flammable without being told that it contained false information.  In granting Formica's motion to dismiss, I concluded:

> There is no right to contribution or indemnification under the Sherman Act or the Lanham Act. Moreover, the release between Formica and Santana bars Bobrick's contribution claim against Formica. Because Santana's underlying action depends upon Bobrick's knowing and intentional acts, a third-party claim for indemnification is unavailable. Finally, the claims for fraud and negligent misrepresentation are not derivative claims for secondary liability, but rather independent tort claims which may not be maintained independently through a third-party complaint under Rule 14(a).

Santana Prods., Inc. v. Bobrick Washroom Equip., Inc., 69 F. Supp. 2d 678, 690-91 (M.D. Pa. 1999).

[9] After moving for summary judgment, counsel for Bobrick and Hornyak wrote to counsel for Santana, threatening to "pursue their available legal remedies against Santana and its counsel, pursuant to 28 U.S.C. § 1927" if the action was not withdrawn.  (Amended Complaint, Dkt. Entry 96, at ¶ 78.)  Section 1927 of title 28 U.S.C. authorizes an award of fees and expenses against "[a]ny attorney . . . who . . . multiplies the proceedings in any case unreasonably and vexatiously. . . ."  The action was not withdrawn; Bobrick and Hornyak did not carry through with the threat to pursue relief under § 1927.

Supplement Second, I addressed what I described as "several important and difficult issues for which there is no controlling precedent in this Circuit." 249 F. Supp. 2d at 470. One of those "important and difficult issues" was whether Santana's Lanham Act claims were subject to the Noerr/Pennington doctrine.[10] Application of the Noerr/Pennington doctrine to the Lanham Act claims was recognized to have a substantial impact on the scope of Santana's Lanham Act claims because it was evident that "the overwhelming bulk of the toilet partition market is directed at public construction . . . ."[11] Id. at 470. I ultimately concluded that Noerr/Pennington was indeed applicable to the Lanham Act claims, thereby restricting any recovery in this matter to lost sales in the private sector.[12] I rejected,

---

[10] Under the Noerr/Pennington doctrine, which derives its name from two Supreme Court decisions -- Eastern Railroad President's Conference v. Noerr Motor Freight, Inc., 365 U.S. 127 (1961), and United Mine Workers v. Pennington, 381 U.S. 657 (1965) -- conduct in petitioning governmental agencies may not form the basis for liability, even if that conduct was otherwise proscribed. The doctrine had been developed in the context of antitrust claims, and there was no authority addressing the applicability of Noerr/Pennington immunity to Lanham Act § 43(a) claims. Santana Prods., 249 F. Supp. 2d at 493. Because § 43(a) of the Lanham Act concerns false advertising in a commercial setting, and commercial speech is accorded less protection under the First Amendment, there were cogent reasons for questioning the extension of Noerr/Pennington to advertising directed at governmental purchasers.

[11] Bobrick has not explained why it waited until the conclusion of massive discovery before presenting this threshold question for adjudication. It may be that discovery would have been narrowed had the parties obtained a determination that relief was limited to the private sector.

[12] Because it was undisputed that Hornyak and Vogel directed their marketing activities solely to the public sector, and that Noerr/Pennington applied as well to the antitrust and common law tort claims, they were entitled to judgment in their favor solely on

however, Bobrick's contention that the Lanham Act claims were barred by laches, finding that Santana had sustained its burden of showing that Bobrick had not been prejudiced by the delay in filing this action. Id. at 501. Thus, I found that Santana had presented a cognizable Lanham Act claim.

Addressing the substantive question of whether Bobrick's marketing campaign included false representations pertaining to Santana's products, I found instances where Bobrick's marketing materials were literally false, instances when there was a genuine question of material fact as to the falsity of the marketing materials, and some instances where, as a matter of law, the representations were not false. Id. at 526-39. Summary judgment on the Lanham Act claim was, accordingly, not granted in Bobrick's favor as to those marketing materials for which there was sufficient evidence of falsity and causation of damages. Id. at 542. Although recognizing that Santana would be entitled to injunctive relief with respect to marketing materials found to be literally false, I declined to enter such relief at that time in light of the fact that there were genuine issues of fact material as to the falsity of certain other promotional materials and it appeared that Bobrick had already discontinued use of the materials found to be literally false. Id. at 542 n.66.

As to the Sherman Act claims, I concluded that Hornyak and Vogel, as captive sales representatives of Bobrick, could not be held liable under § 1 of the Sherman Act, which

that basis.

9

governs concerted anti-competitive action.[13] I further concluded that Bobrick's marketing campaign did not constitute an unlawful restraint of trade and that, in any event, Santana had failed to show more than a negligible impact on competition, thus warranting judgment in favor of Bobrick on the Sherman Act § 1 claim. I also found that judgment in favor of Bobrick on the Sherman Act § 2 claim was warranted essentially for the reasons articulated by the Eastern District of New York in the parallel case against Sylvester. Finally, I determined that judgment in favor of the Defendants on the tortious interference claim was appropriate because there was no evidence of the loss of a prospective private sector contract within the applicable one year limitations period.

Observing that the parties had "fought valiantly in this protracted case," id. at 545, and that "appellate consideration of difficult and close questions prior to any trial may serve the interests of the parties and of judicial economy," I directed entry of final judgment in favor of Bobrick as to the Sherman Act and tortious interference claims, and in favor of Hornyak and Vogel as to all claims, in accordance with Rule 54(b) of the Federal Rules of Civil Procedure. Furthermore, I certified that the question involving the applicability of the Noerr/Pennington doctrine to the Lanham Act claims involved a "controlling question of law

---

[13] Hornyak and Bobrick had argued that Hornyak was a captive sales representative incapable of "conspiring" with its principal, thereby precluding liability on the part of Hornyak for a Sherman Act § 1 claim. 249 F. Supp. 2d at 505.

as to which there is substantial ground for difference of opinion . . . ."[14]  (Id.)

Santana and Bobrick both petitioned for leave to appeal this Court's summary judgment rulings.[15]  After granting both petitions, a unanimous panel affirmed the entry of judgment in favor of Bobrick, Hornyak and Vogel on the Sherman Act § 1 claim on the ground that Santana's evidence did not show any restraint of trade sufficient to support an antitrust action.  See Santana Prods., Inc. v. Bobrick Washroom Equip., Inc., 401 F.3d 123, 132-35 (3d Cir. 2005).  The panel also unanimously affirmed this Court's entry of summary judgment in favor of Bobrick on the tortious interference with prospective economic advantage claim.  (Id. at 140-41.)  As to the Lanham Act claims, however, the panel split.  The majority concluded that the Lanham Act claims were barred by laches, holding that it had been incumbent upon Santana to prove not only the absence of prejudice to Bobrick resulting from the delay in commencing litigation, but also that its delay was excusable.  Id. at 139-40.  Judge Chertoff dissented, disagreeing with the majority's conclusion that a plaintiff must show both that its delay was excusable and that the defendant did not suffer

_____

[14] The Eastern District of New York had also certified as involving "a controlling question of law as to which there is substantial ground for difference of opinion," 28 U.S.C. § 1292(b), its decision granting judgment in favor of Sylvester on the Sherman Act § 2 claim.  See Sylvester, 121 F. Supp. 2d at 738.

[15] Santana did not seek to appeal the dismissal of its Sherman Act § 2 claim, but did challenge this Court's rulings with respect to the Sherman Act § 1, Lanham Act, and tortious interference claims.  Bobrick appealed this Court's determination that the Lanham Act claim was not barred by the doctrine of laches.

prejudice as a result of the delay.  Id. at 142 (Chertoff, J., dissenting).  As a result of the ruling on laches, a decision on the application of the Noerr/Pennington doctrine to the Lanham Act claims was obviated.  The Third Circuit directed that judgment be entered in favor of the defendants on all claims.

Santana's petition for a writ of certiorari was denied on November 28, 2005.  546 U.S. 1031 (2005).  As a result, the proceedings in this Court terminated in favor of Bobrick, Hornyak, and Vogel.  There then ensued Bobrick's quest to recoup its fees and the fees incurred by its captive sales representatives.

D.  The Fee Request in Sylvester

As noted above, the parallel litigation against Sylvester in the Eastern District of New York had been stayed pending the outcome of the case in this court.  As a result of the final disposition of this matter, Santana sought to voluntarily dismiss the claims remaining in the New York action with prejudice.  Sylvester, now represented by counsel who represented Bobrick in the Underlying Litigation and in this case, objected to any dismissal that did not include an award of fees and costs in favor of Sylvester, contending that such an award was warranted under § 35 of the Lanham Act, 15 U.S. § 1117.[16]  The matter was referred to Chief United States Magistrate Judge Michael L. Orenstein, who rendered an oral report

_____

[16] Section 35 authorizes an award of reasonable attorneys fees to the prevailing party "in exceptional cases."  15 U.S.C. § 1117(a).

and recommendation that the motion to dismiss with prejudice be granted and that Sylvester's request for counsel fees be denied. Sylvester objected, and the matter was then addressed by District Judge Ross. As described in Judge Ross's comprehensive opinion, Sylvester argued that it should be awarded fees "because (1) plaintiff filed and prosecuted claims having no real substance; (2) plaintiff filed its suit without any investigation of the merits of its claims; and (3) plaintiff filed suit as a competitive ploy," the grounds recognized by the Second Circuit for awarding fees in favor of a prevailing defendant in a Lanham Act case. <u>Santana Prods., Inc. v. Sylvester & Assocs., Ltd.</u>, 2006 U.S. Dist. LEXIS 98045, at *10-*11 (E.D.N.Y. Nov. 13, 2006). Judge Ross addressed each of Sylvester's contentions. <u>Id.</u> at *16.

First, Judge Ross concluded that the evidence presented by Santana in the Underlying Litigation showed that the Lanham Act claims had real substance. Judge Ross further observed that the evidence indicated that Sylvester had participated in a conspiracy to violate the Lanham Act, thus dispelling Sylvester's contention that the claim had been brought in bad faith. <u>Id.</u> at *16-*43. Judge Ross then concluded that Sylvester failed to show that the action against it had been brought without any investigation. <u>Id.</u> at *44-*45. Finally, Judge Ross found that the evidence presented by Sylvester was "patently insufficient to demonstrate that the suit was brought merely for harassment or as a competitive ploy." <u>Id.</u> at *47.

Sylvester appealed the denial of its application for fees and costs to the Second Circuit, which affirmed Judge Ross's ruling on May 22, 2008. Santana Prods., Inc. v. Sylvester & Assocs., Ltd., 279 F. App'x 42 (2d Cir. 2008). Not only did the Court of Appeals affirm Judge Ross, but it also granted Santana's request for an award of double costs and fees, with the Second Circuit describing Sylvester's appeal as frivolous and rife with misrepresentations made by Sylvester's counsel.[17] See No. 9:98-CV-06721, Dkt. Entry 127.

E. The Dragonetti and Abuse of Process Claims Brought in State Court

Undeterred by the rejection of Sylvester's claim for fees in the New York litigation, Vogel, another captive sales representative of Bobrick, commenced litigation in the Court of Common Pleas of Lackawanna County, asserting a claim of wrongful use of civil proceedings under 42 Pa.C.S.A. §§ 8351, et seq. (popularly known as the "Dragonetti Act"), as well as a common law claim for abuse of process.[18] The Hon. Carmen D. Minora sustained Santana's preliminary objections and dismissed Vogel's action, finding that "the

_____

[17]Specifically, the Second Circuit concluded that "because the disingenuous nature of the legal arguments and factual assertions made on appeal made clear the fault lies with Defendants-Appellants' attorney rather than with Defendants-Appellants themselves, the fees and costs awarded shall be borne by . . . counsel directly . . . ." (Id.) On remand, District Judge Ross approved a stipulation that awarded Santana approximately $100,000 in fees and costs incurred in connection with the baseless appeal.

[18] Vogel was also represented by the same counsel representing Bobrick in this matter.

claims of Vogel are disingenuous as well as legally insufficient . . . ." Vogel Sales Co. v. Santana Prods., Inc., No. 2005 CV 5085, at 8 (Lacka. Co. May 23, 2007).  In a Memorandum Opinion dated September 9, 2008, the Pennsylvania Superior Court affirmed Judge Minora's May 23, 2007 ruling. 963 A.2d 581 (Pa. Super. 2008) (Table).   Both the state trial and appellate court concluded that Bobrick, Hornyak and Vogel were viewed in the Underlying Litigation as having a "unity of economic interests," (id. at 10), and that it was proper to regard them as such for purposes of the Dragonetti and abuse of process claims as well.  (Id.)  The Pennsylvania Supreme Court denied Vogel's petition for allowance of appeal on May 28, 2009.  973 A.2d 412 (Pa. 2009).

F.  Procedural History

On August 17, 2007, after Judge Ross had rejected Sylvester's fee request and after Judge Minora had dismissed Vogel's Dragonetti and abuse of process claims, Bobrick and Hornyak commenced this litigation against Santana, its principals, and its former attorney. The claims presented here mirror those rejected by the Pennsylvania state courts in the litigation initiated by Vogel.

On October 18, 2007, defendants moved for dismissal of the action.  (Dkt. Entry 17 & 18.)  By Order entered on February 26, 2008, essentially all discovery was stayed pending a

decision on the Motions to Dismiss.[19] (Dkt. Entry 44.) Oral argument on the dispositive motions was held on June 27, 2008. (Dkt. 66.)

On November 4, 2008, while the motions to dismiss were pending, Plaintiffs filed an amended complaint. (Dkt. 96.) Significantly, while the original complaint had included 34 exhibits, including memoranda, excerpts of transcribed testimony, and correspondence, the Amended Complaint did not contain any exhibits.

Defendants thereafter moved to dismiss the Amended Complaint. (Dkt. Entry 112.) On November 25, 2009, oral argument on the pending motions was conducted.[20] The Joint Motion to Dismiss the Amended Complaint is ripe for decision.

## III. DISCUSSION

### A. Standard of Review

Defendants' Rule 12(b)(6) motion presents for decision the question of whether Plaintiffs' Amended Complaint, considered in the context of this protracted controversy,

---

[19] The Stay of Discovery did not apply to the deposition of Richard Stern, Esq., an attorney consulted by Santana and its counsel as an expert in the field of antitrust law. Plaintiffs have moved for further discovery in relation to their desire to complete the deposition of Mr. Stern. (Dkt. Entry 187.) Because it is evident that Plaintiffs cannot present a viable claim under the Dragonetti Act or the common law of abuse of process, the motion to lift the stay of discovery will be denied.

[20] On October 2, 2009, Defendant Jackson moved separately for dismissal of the claims asserted against him, arguing that plaintiffs had failed to comply with Pennsylvania's Certificate of Merit requirement. (Dkt. Entry 179.) In view of the determination that Plaintiffs cannot present viable Dragonetti and abuse of process claims, there is no need to address Jackson's separate motion.

makes the requisite "showing sufficient to justify moving the case beyond the pleadings to the next stage of litigation." Phillips v. County of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008). As instructed in Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009):

> [A] complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

This requirement of stating a claim that has facial plausibility "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of [wrongful conduct]." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007). "Bare assertions," "legal conclusions," and "formulaic recitation[s] of the elements of a cause of action" presented in the assailed pleading are not entitled to an assumption of truth. Iqbal, 129 S.Ct. at 1950-51. The court must consider the properly pleaded factual averments, but it may also take into account matters of public record, including court opinions. See Sands v. McCormick, 502 F.3d 263, 268 (3d Cir. 2007). Documents referenced in the complaint as forming a predicate for a claim may be reviewed as well. See Pension Benefit Guar Corp. v. White Consol. Indus., 998 F. 2d 1192, 1196 (3d Cir. 1993). "'Further, documents whose contents are alleged in the complaint and whose authenticity no party questions, which are not physically attached to the pleading, may be considered.'"[21] Pryor v. Nat'l Collegiate Athletic Ass'n, 288

---

[21] Plaintiffs had moved to strike Defendants' Motion to Dismiss the Amended Complaint and supporting brief because Defendants had referenced and discussed exhibits

17

F.3d 548, 560 (3d Cir. 2002) (quoting 62 Fed. Proc., L. Ed. § 62:508). "Determining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 129 S. Ct. at 1949; see also McTernan v. City of York, 577 F. 3d 521, 530 (3d Cir. 2009).

B.  The Wrongful Use of Civil Proceedings Claim

The Pennsylvania General Assembly has codified the common law cause of action for malicious use of civil proceedings at 42 Pa.C.S.A. §§ 8351, et seq.  This legislation imposes liability on a person who participates "in the procurement, initiation or continuation of civil proceedings" if that person "acts in a grossly negligent manner or without probable cause and primarily for a purpose other than that of securing the proper discovery, joinder of parties or adjudication of the claim in which the proceedings are based." 42 Pa.C.S.A. § 8351(a)(1).

Probable cause exists if there is a reasonable belief in the existence of the facts upon which the claim is based, and the person either:

(1) Reasonably believes that under those facts the claim may be valid under the existing or developing law;

(2) Believes to this effect in reliance on the advice of counsel, sought in good

---

attached to the original complaint and had referenced the Superior Court's unpublished decision affirming the dismissal of Vogel's action.  (See Dkt. 118.)  By Order entered on February 23, 2009 (Dkt. 134), the Motion to Strike was granted as to an excerpt from the deposition of Mr. Hornyak, but denied in all other respects.

faith and given after full disclosure of all relevant facts within his knowledge and information; or

(3) Believes as an attorney of record, in good faith that his procurement, initiation or continuation of a civil cause is not intended to merely harass or maliciously injure the opposite party.

42 Pa. C. S. A. § 8352. Insofar as attorney liability is concerned, "as long as an attorney believes that there is a slight chance that his client's claims will be successful, it is not the attorney's duty to prejudge the case." Morris v. DiPaolo, 930 A.2d 500, 505 (Pa. Super. 2007).

The presence of probable cause, however, "does not necessarily defeat the entire cause of action for wrongful use of civil proceedings, as 'the clear language of Section 8351 permits a cause of action to be based on gross negligence or lack of probable cause.'" Buchleitner v. Perer, 794 A.2d 366, 378 (Pa. Super. 2002) (quoting Bannar v. Miller, 701 A.2d 242, 249 (Pa. Super. 1997) (emphasis added). "Even if a Dragonetti plaintiff can show that the defendant either lacked probable cause in or acted with gross negligence by initiating or maintaining the underlying action, the defendant is not liable unless . . . the plaintiff can demonstrate the underlying action was filed for an improper purpose." Schmidt v. Currie, 470 F. Supp. 2d 477, 480 (E.D. Pa. 2005), aff'd, 217 F. App'x 153 (3d Cir. 2007). The plaintiff, of course, carries the burden of showing that "[t]he primary purpose for which the proceedings were brought was not that of securing the proper discovery, joinder of parties or adjudication of the claim on which the proceedings were based." 42 Pa.C.S.A. §

8354(4) (emphasis added).  It is thus evident that "a party seeking redress under *Dragonetti* bears a heavy burden." U.S. Express Lines, Ltd. v. Higgins, 281 F.3d 383, 394 (3d Cir. 2002).

"The Court decides the existence of probable cause, gross negligence, or improper purpose as a matter of law when the facts are not in dispute." Schmidt v. Currie, 217 F. App'x 153, 155 (3d Cir. 2007).  Moreover, the questions of probable cause, gross negligence, and improper purpose may be determined on a motion to dismiss.  See U.S. Express Lines, 281 F.3d at 395-96.

1.  The probable cause element

Plaintiffs argue that this Court must assess whether there existed probable cause for each of the claims presented in the underlying litigation so that the absence of probable cause for any claim warrants denial of the motion to dismiss.  Plaintiffs' argument is not supported by the language or structure of the Dragonetti Act, and has been rejected consistently by the courts.

Section 2 of the Dragonetti Act, 42 Pa.C.S.A. § 8352, uses the phrase "probable cause for doing so," referring to the "procurement, initiation, or continuation of civil proceedings."  Thus, the statutory definition of "probable cause" does not support a conclusion that the absence of probable cause for a particular claim is sufficient to warrant recovery.

Section 4 of the Dragonetti Act, 42 Pa.C.S.A. § 8354, entitled "Burden of Proof,"
imposes upon the plaintiff the burden of establishing that "[t]he defendant did not have
probable cause for his action." The term "action" is defined in the Pennsylvania Statutory
Construction Act as "[a]ny suit or proceeding in any court of this Commonwealth." 1
Pa.C.S.A. § 1991. Thus, the statutory provision allocating the burden of proof to the plaintiff
supports a conclusion that the plaintiff must show an absence of probable cause for the
entire action.

Moreover, section 3 of the Dragonetti Act, 42 Pa.C.S.A. § 8353, delineating the
recoverable damages, does not state that a party may recover expenses incurred in
defending against a particular claim for which there was an absence of probable cause.
Instead, the General Assembly has authorized recovery of, inter alia, attorney fees
"reasonably incurred in defending . . . against the proceedings," as well as "specific
pecuniary loss that has resulted from the proceedings," and "any emotional distress that is
caused by the proceedings." 42 Pa.C.S.A. § 8353 (3), (4), and (5). Thus, the damages
provision supports a conclusion that Plaintiffs must show that the proceedings were brought
without probable cause.

Plaintiffs argue that the use of the word "claim" in §§ 8351 and 8352 supports their
position in this matter. Section 8352 provides, in pertinent part, that "[a] person who takes
part in the procurement, initiation or continuation of civil proceedings against another has

probable cause for doing so if he reasonably believes in the existence of the facts upon which the <u>claim</u> is based, and [r]easonably believes that under those facts the <u>claim</u> may be valid under the existing or developing law." Far from supporting Plaintiffs' position, this section supports a conclusion that probable cause for any claim asserted in the proceedings defeats the action. The plain language of this section indicates that if there is a reasonable belief as to the potential viability of "the claim," there exists probable cause for the "procurement, initiation or continuation of civil proceedings." Moreover, nowhere does the legislative language support an inference that the absence of probable cause for any claim enables a party to seek recovery even though there exists probable cause for other claims presented in the litigation.

Also supporting this construction is the fact that the plaintiff must prove that the "<u>proceedings</u>" terminated in the plaintiff's favor. 42 Pa.C.S.A. § 8354(2). It would make little sense to authorize recovery of damages for pursuit of a baseless claim pursued without probable cause only if the entire proceedings terminated in the plaintiff's favor.

Consistent with this understanding of the need to prove a lack of probable cause for the entire proceedings at issue, and not just a single claim for relief, the Pennsylvania courts have described the plaintiff's burden as showing that "the defendant caused [the] <u>proceedings</u> to be instituted without probable cause." Ludmer v. Nernberg, 640 A.2d 939, 942 (Pa. Super. 1994) (emphasis added). <u>Accord</u> Meiksin v. Howard Hanna Co., 590 A.2d

22

1303, 1304 (Pa. Super. 1991) (plaintiff must show that "the defendant lacked probable cause to institute the proceedings"). Moreover, in the few instances where the issue has been raised, the courts have ruled that the absence of probable cause for less than all the claims presented does not authorize a Dragonetti claim where there is probable cause for one or more of the claims in the underlying matter.

For example, in Laventhol & Horwath v. First Pennsylvania Bank, N.A., 18 Phila. 580, 1998 WL 679860 (Phila. Com. Pl., Nov. 10, 1988), aff'd., 573 A.2d 626 (Pa. Super.), app. denied, 593 A.2d 420 (Pa. 1990), the court addressed an argument indistinguishable from that presented by Plaintiffs in this matter. Laventhol & Horwath brought suit against First Pennsylvania Bank, its law firm, and two of the firm's attorneys, seeking recovery under the Dragonetti Act. As defined by Judge Prattis, the main issue was "whether the fact that one element of a pleading may have been alleged without sufficient probable cause, may be used as a basis for initiating a suit against the attorney, of a party, under 42 Pa.C.S.A. § 8351, et seq., where the other elements and theories of that pleading alleged by the party *are* supported by probable cause." Id. at 583 (emphasis in original). Observing that the statutory cause of action is concerned with the wrongful initiation of a legal proceeding, Judge Prattis answered the question in the negative, explaining:

> First Pennsylvania Bank's other counts . . . are not alleged to be wrongfully initiated. In fact, the evidence of the case indicates that there were adequate reasons for First Pennsylvania Bank to bring a law suit in order to determine the rights and liabilities of the parties involved in the principal proceedings.

23

It should not be concluded that First Pennsylvania primarily brought the action for an improper goal merely because one element or argument in the Bank's pleading may have been untenable. The gravamen of wrongful use of civil proceedings is the baseless or reckless prosecution of a <u>suit</u>.

In light of the foregoing discussion, it cannot be said that the Dilworth defendants' initiation of the action . . . on behalf of their client constituted a wrongful use of civil proceedings under 42 Pa. C. S. A. § 8351, *et seq.*

Id. at 588 (emphasis in original).

In Rosen v. Tabby, No. Civ. A. 95-2968, 1997 WL 667147 (E.D. Pa. Oct. 9, 1997), aff'd mem., 175 F.3d 1011 (3d Cir. 1999), the plaintiff, an attorney who had been sued in the underlying action, sought relief under the Dragonetti Act on the grounds that there had been no probable cause to bring a fraud claim against him and his firm. Judge Green identified the key question as whether there was "a genuine issue as to the existence of probable cause to bring the underlying suit, or to bring only the fraud claims in the underlying suit." Id. at *3. Relying upon <u>Laventhol & Horwath</u>, Judge Green concluded that the existence of probable cause for institution of the suit, and not for each claim asserted in the action, was dispositive. Judge Green observed that "it is <u>clear and certain</u> that the probable cause to bring the underlying litigation relates to the entirety of the lawsuit, and not to some specific claim or claims within that suit." Id. at *7 (emphasis added).

In the parallel litigation commenced in state court by Vogel, Judge Minora similarly concluded, on preliminary objections, that "the proper scope of review . . . is essentially that the case as a whole has merit; not each and every count of a complaint." <u>Vogel Sales Co.</u>,

24

2005-CV-5085, at 10.  Thus, Judge Minora declined Vogel's invitation to assess the

existence of probable cause as to each claim asserted against it, noting that "Vogel's

[Dragonetti] claim is legally insufficient . . . because federal courts have already determined

that Santana's case as a whole had at least some merit. . . ."  (Id. at 13.)

　　　In summary, it is clear that the issue presented in a Dragonetti Act case is whether

there was probable cause to initiate or continue the underlying suit, and not whether there

existed probable cause for each and every claim presented.[22]  Thus, the existence of

probable cause supporting some of Santana's claims in the underlying litigation means that

Plaintiffs will be unable to show one of the predicates for a Dragonetti claim, i.e., the initiation

or continuation of proceedings without probable cause.

---

　　　[22] Plaintiffs rely upon Johnson v. Knorr, 477 F.3d 75 (3d Cir. 2007), which held that, under certain circumstances, it is necessary to ascertain whether there was probable cause for each count of a multi-count criminal complaint in a civil rights malicious prosecution case.  Our Court of Appeals previously held, however, that probable cause supporting one criminal charge "disposes of . . . malicious prosecution claims with respect to all of the charges brought against [the plaintiff]."  Wright v. City of Philadelphia, 409 F.3d 595, 603-04 (3d Cir. 2005)  The vitality of Johnson was recently questioned in Kossler v. Crisanti, 564 F.3d 181, 194 n.8 (3d Cir. 2009) (en banc), with the observation that, to the extent that Wright and Johnson are "in unavoidable conflict," Wright must control.  There is no need in this case to address any conflict between Wright and Johnson because neither case involved an application of the Dragonetti Act.  Indeed, neither case relied upon Pennsylvania case law.  Instead, both decisions concern the entirely separate matter of a civil rights malicious prosecution claim arising out of a criminal prosecution.  Neither case concerned the alleged wrongful use of civil proceedings.  Accordingly, Plaintiffs' reliance upon Johnson is misplaced.

25

2. The existence of probable cause

The evidence and legal arguments that were presented in the underlying action on the parties' summary judgment motions preclude Plaintiffs from showing the absence of probable cause in the procurement, initiation and continuation of that civil proceeding. The evidence was sufficient to support a finding that some of the marketing materials employed by Bobrick and its sales representatives were literally false. Significantly, a plaintiff in a Lanham Act case "must prove either literal falsity or consumer confusion, but not both." Castrol, Inc. v. Pennzoil, Co., 987 F.2d 939, 943 (3d Cir. 1993). This Court also concluded that the likelihood of injury from Plaintiffs' literally false advertising was "patent" so as to support Santana's request for injunctive relief. 249 F.Supp. 2d at 542 n.66. Indeed, while finding that Santana was entitled to summary judgment on those aspects of its Lanham Act claim that concerned literally false promotional materials, id. at 537, judgment in Santana's favor on its request for injunctive relief was withheld only because there were genuine disputes of material fact concerning the falsity of certain other promotional materials, and because it appeared that Bobrick and Hornyak had discontinued use of those matters that were found to be literally false.

That the Third Circuit ultimately concluded that the Lanham Act claim was barred in its entirety by the doctrine of laches does not mean that Plaintiffs in this action could establish that Defendants lacked probable cause for the Lanham Act claim. On the contrary,

the fact that I concluded that Santana was entitled to prevail on the laches issue forecloses a finding that probable cause to pursue the Lanham Act claim was lacking.  As explained in the Comments to the Restatement (Second) of Torts § 675:

> [A] decision by a competent tribunal in favor of the person initiating civil proceedings is conclusive evidence of probable cause.  This is true although it is reversed upon appeal and finally terminated in favor of the person against whom the proceedings were brought.[23]

In this case, I specifically found that Santana had carried its burden of showing that Bobrick had not suffered material prejudice as a result of the delay in commencement of litigation, a finding that I believed required rejection of the laches defense.  249 F.Supp. 2d at 501.

Even if a finding by a trial court on that issue is not conclusive, it is sufficient to show that there were reasonable grounds for Santana's contention that laches did not bar its Lanham Act claims. This conclusion is buttressed by the fact that Judge Chertoff concurred with my conclusion on the laches issue.  "In determining probable cause for initiation of civil proceedings, all that is necessary is that the claimant reasonably believe that there is a sound chance that his claim may be held legally valid upon adjudication."  Restatement (Second) of Torts § 675, comment e.  That this Court and Judge Chertoff of the Court of

---

[23] In Laventhol & Horwath, the court observed that "[i]t is . . . useful to consider the comments under Section 674, as it applies to . . . the probable cause requirements."  See also U.S. Express Lines, Ltd. v. Higgins, 281 F. 3d 383, 394 (3d Cir. 2002) (the tort of wrongful use of civil proceedings "as applied in Pennsylvania conforms with Section 674 of the Second Restatement of Torts"); Korn v. Epstein, 727 A.2d 1130, 1133 (Pa. Super. 1999); Ludmer v. Nernberg, 640 A.2d 939, 942 (Pa. Super. 1994).

Appeals agreed with Santana's position is sufficient to defeat Plaintiffs' contention that Santana lacked a reasonable belief that there was a sound chance of prevailing on its Lanham Act claims.

Nor does the substantial evisceration of Santana's Lanham Act claims by application of the <u>Noerr/Pennington</u> doctrine indicate that Santana proceeded with this litigation in the absence of probable cause. Whether <u>Noerr/Pennington</u> immunity applied to Lanham Act § 43(a) claims was an issue of first impression. The arguments advanced by Santana to defeat application of the <u>Noerr/Pennington</u> doctrine evidenced a reasonable belief that it may prevail on this particular issue. "[A] reasonable belief in the <u>possibility</u> that the claim may be held valid is sufficient to give probable cause for the initiation of civil proceedings." Restatement (Second) of Torts § 674, comment e (emphasis added). As explicated in Comment f to § 675 of the Restatement (Second) of Torts:

> If the legal validity of a claim is uncertain, the person who initiates the civil proceeding may believe that his claim is meritorious, but he can have no more than an opinion that the chances are good that the court might decide to uphold it. The question is not whether he is correct in believing that the court would sustain the claim, but whether his opinion that there was a sound chance that the claim might be sustained was a reasonable one. To hold that the person initiating civil proceedings is liable unless the claim proves to be valid, would throw an undesirable burden on those who by advancing claims not heretofore recognized nevertheless aid in making the law consistent with changing conditions and changing opinions. There are many instances in which a line of authority has been modified or rejected. To subject those who challenge such authority to liability for wrongful use of civil proceedings might prove a deterrent to the overturning of archaic decisions.

28

In Laventhol & Horwath, the court observed that imposing liability merely because a legal claim is rejected "would eventually leave our legal system on a stagnant legal plain." 18 Phila. at 586.

The certification of the Noerr/Pennington ruling as involving a "controlling question of law as to which there is a substantial ground for difference of opinion," buttresses the conclusion that Santana had probable cause for the initiation and prosecution of the Underlying Litigation. "A substantial ground for difference of opinion exists when there is a genuine doubt or conflicting precedent as to the correct legal standard." Eli Lilly and Co. v. Actavis Elizabeth, LLC, Civil Action No. 07-3770, 2010 WL 715411, at *4 (D. N.J. Feb. 23, 2010). The certification of the decision to apply the Noerr/Pennington doctrine to the Lanham Act claim certainly reflects a genuine doubt as to its applicability, signifying that there was probable cause for pursuit of the matter. The Third Circuit's exercise of its discretionary authority to grant Santana's petition for permission to appeal the Noerr/Pennington holding further demonstrates the existence of probable cause.[24]

Substantial support for the conclusion that, as a matter of law, the Underlying Litigation was prosecuted with probable cause is provided by the decision of Judge Ross

_____

[24] Courts of Appeals have discretion whether to accept an appeal, where, as here, a district judge has certified that its ruling involves a controlling question of law as to which there is substantial ground for difference of opinion. See Armann v. McKean, 549 F.3d 279, 285 (3d Cir. 2008).

rejecting Sylvester's claim for an award of fees under § 35(a) of the Lanham Act, 15 U.S.C. § 1117(a).  Judge Ross held that an award of fees under the Lanham Act is appropriate where, inter alia, "'plaintiff's claims had no real substance.'" Santana Prods., 2006 U.S. Dist. LEXIS 98045, at *16.  In determining whether Santana's Lanham Act claim lacked real substance, Judge Ross undertook a comprehensive review of this Court's summary judgment ruling.  Even as to those promotional materials that this Court found not to be literally false, thereby entitling Bobrick to summary judgment in its favor, Judge Ross found that Santana had presented plausible justifications for its contentions that those materials were actionable.  Id. at *25-*28.  Addressing an argument advanced here by Plaintiffs – that Santana could not show injury resulting from the use of false advertising materials – Judge Ross found that Santana had adduced sufficient evidence to defeat any contention that its claim lacked real substance.  Indeed, Judge Ross concluded that Santana had presented sufficient evidence that Bobrick and its sales representative, Sylvester, had participated in a conspiracy to violate the Lanham Act, id. at *32, and had "presented sufficient evidence to support a non-frivolous claim for compensatory damages. . . ."  Id. at *42-*43.

Because it is indisputable that Santana's Lanham Act claims were supported by probable cause, there is no need to address the question of whether there existed probable

cause for the other claims asserted in the Underlying Litigation.[25]  The evidence and arguments presented in connection with the Lanham Act claims are sufficient to preclude Plaintiffs from showing the absence of probable cause for the procurement, initiation, or continuation of the Underlying Litigation.[26]

### 3.  Gross Negligence

The presence of probable cause does not, of course, insulate Defendants from liability under the Dragonetti Act.  Buchleitner, 794 A.2d at 378.  Parties and/or counsel whose conduct in the course of the litigation displays "gross negligence" may be held accountable for such conduct.  See Bannar, 701 A.2d at 249.

As to this alternative basis for liability under the Dragonetti Act, plaintiffs assert:

---

[25] Given the liberal standard governing the probable cause issue -- reasonable belief in the existence of facts upon which a claim is based coupled with a reasonable belief that under those facts the claim may be valid under existing or developing law -- it would appear that Plaintiffs would be unable to show the absence of probable cause for the claims asserted by Santana under sections 1 and 2 of the Sherman Act.

[26] Plaintiffs, citing the non-precedential opinion of Ken J. Pezrow Corp. v. Karabasz, No. 95-1239 (3d Cir. Oct. 26, 1995), argue that probable cause cannot be defined in terms of the summary judgment process.  In Pezrow, the district court had held that the denial of summary judgment in the underlying litigation had "conclusively established that the defendants had probable cause to bring the prior law suit."  Id. at 1.  In this case, it is not solely the fact that some of the particulars of Santana's Lanham Act claims survived summary judgment that compels the conclusion that Plaintiffs are unable to show the absence of probable cause for the initiation and continuation of the underlying litigation. Instead, it is the nature of the evidence and the substance of the arguments presented in the Underlying Litigation that convincingly demonstrate the existence of a reasonable belief that Santana's claims had ample factual foundation and substantive legal grounding.

Defendants acted in a grossly negligent manner by: (1) failing to conduct an adequate factual and legal investigation prior to initiating the underlying suit; (2) initiating and continuing the underlying suit even after they knew or should have known that the claims asserted in the underlying lawsuit were barred by the well-established doctrine of laches and the Noerr/Pennington doctrine; and (3) initiating and continuing the underlying lawsuit when they knew or should have known that they lacked the requisite evidence to prove the elements of the antitrust and tortious interference claims asserted in the underlying law suit.

(Brief in Opp. to Mot. to Dism., Dkt. Entry 128, at 56.)

Pennsylvania courts have defined gross negligence in the context of Dragonetti claims to mean the "want of scant care" or 'lack of slight diligence or care, or a conscious, voluntary act or omission in reckless disregard of a legal duty and of the consequences to another party. . . .'" Schmidt, 470 F. Supp. 2d at 480. Gross negligence has also been defined as "'the want of even scant care' and 'the failure to exercise even that care which a careless person would use.'" Hart v. O'Malley, 781 A.2d 1211, 1218 (Pa. Super. 2001).

The factual and legal presentations made on behalf of Santana in the underlying litigation preclude a finding that defendants conducted a grossly negligent investigation or acted with gross negligence in initiating and continuing the underlying lawsuit. On the contrary, Santana's counsel presented cogent arguments rooted in the record and applicable precedent. No factfinder could conclude that, in initiating and prosecuting the underlying litigation, Santana, its officers and attorneys exhibited a "lack of slight diligence or care, or a conscious, voluntary act or omission in reckless disregard of a legal duty" towards Plaintiffs.

32

As this Court concluded in addressing the parties' summary judgment motions, Santana fought valiantly in a case replete with "important and difficult issues" that were not governed by any directly applicable precedent. 249 F. Supp. 2d at 545. Santana presented a comprehensive factual record. This is not a case where a litigant and its counsel presented claims in a wholly conclusory fashion, or suggested that somewhere in a voluminous record there lurked a genuine dispute of material fact. As evidenced by this Court's comprehensive ruling, Santana presented carefully reasoned arguments. That Santana was unsuccessful does not, by any means, evidence gross negligence.[27]

Plaintiff's repetitive intonation of the phrase "defendants were grossly negligent in bringing and continuing to prosecute the 1996 litigation," (Amended Complaint, Dkt. Entry 96, at ¶¶ 115, 120 and 147), does not insulate its Dragonetti action from a motion to dismiss.

---

[27] As with the probable cause issue, there is no need to analyze Santana's conduct in relation to each of the four causes of action presented in the Underlying Litigation. It bears observation, however, that the record created in the Underlying Litigation forecloses a finding that Santana, its principals, and its counsel acted with gross negligence in pursuing the antitrust and tortious interference claims. The fact that the Eastern District of New York certified for immediate appeal its dismissal of the Sherman Act § 2 claim shows that it was presented with more than "a lack of slight diligence or care." Santana's § 1 Sherman Act claim involved the question of whether a captive sales agency is capable of conspiring with its principal, a matter not previously addressed by the Supreme Court or the Third Circuit. Moreover, Santana had marshaled evidence sufficient to show that Bobrick had engaged in a conspiracy with other toilet compartment manufacturers. 249 F. Supp. 2d at 507. Santana presented plausible arguments in support of its position that liability could be imposed upon Bobrick under § 1 of the Sherman Act. Santana's contentions were neither frivolous nor ill-conceived, they were simply not convincing. Again, that Santana was unsuccessful affords no basis for a conclusion that it acted without even slight care.

Such conclusory assertions are entitled to no assumption of truth. Iqbal, 124 S.Ct. at 1950-51. Moreover, this Court's considerable experience in the underlying litigation along with application of ordinary common sense yields the conclusion that Santana and its related parties did not initiate or prosecute the underlying litigation with gross negligence or in the absence of probable cause. Accordingly, the Dragonetti Act claim will be dismissed.[28]

### C. The Abuse of Process Claim

"The Tort of 'abuse of process' is defined as the use of legal process against another 'primarily to accomplish a purpose for which it is not designed.'" Rosen v. American Bank of Rolla, 627 A.2d 190, 192 (Pa. Super. 1983) (quoting Restatement (Second) of Torts, § 682). As explained in American Bank of Rolla, 627 A.2d at 192, "[t]he significance of [the word 'primarily'] is that there is no action for abuse of process when the process is used for the purpose for which it is intended, but there is an incidental motive of spite or ulterior purpose of benefit to the defendant." "A cause of action for abuse of process requires some definite act or threat not authorized by the process, or aimed an objective not legitimate in the use of the process . . . ." Shaffer v. Stewart, 473 A.2d 1017, 1019 (Pa. Super. 1984).

Despite its verbosity, the Amended Complaint does not allege facts from which it may be inferred that Santana brought the Underlying Litigation primarily for a purpose other than

---

[28] For the reasons expressed in the next section of this opinion, Plaintiffs also cannot show that this action was brought primarily for an improper purpose, thus requiring dismissal of the Dragonetti claim on this ground as well.

the proper adjudication of its claims. Plaintiffs' complaint that Santana brought the litigation to force Bobrick to alter its marketing efforts (Amended Complaint, Dkt. Entry 96, at ¶ 190), does not suggest any improper purpose. Injunctive relief aimed at false and misleading advertising is authorized by the Lanham Act, and Santana had convinced this Court that such relief as to certain marketing materials was warranted. That a party may be deterred from taking certain action it believes is lawful by commencement of an action for which injunctive relief may be awarded does not support any inference that the action was brought primarily for a purpose other than that of securing the proper adjudication of the claim.

Plaintiffs also argue that Hornyak was joined as a defendant "to make it harder for Bobrick to transfer the case to California or New York where the law was believed to be less favorable to Santana." (Amended Complaint, Dkt. Entry 96, at ¶ 179.) This averment also fails to support an inference that Hornyak was joined primarily for a purpose other than the proper adjudication of claims asserted against it. In this regard, Hornyak was properly joined as a defendant for its involvement in the alleged campaign to disparage Santana's products by falsely describing them as flammable. As Judge Ross recognized in the Sylvester action, there was an ample foundation for joining Bobrick's captive sales agencies on the Lanham Act claims. Santana Prods., 2006 U. S. Dist. LEXIS 98045, at *32. Moreover, Hornyak was a proper target for injunctive relief, and avoided such a remedy only by virtue of application of the Noerr/Pennington doctrine in a case of first impression. That one of the reasons for

35

joining Hornyak may have been to make more difficult a transfer of venue does not mean that Hornyak was sued primarily for an improper purpose.

Nor is the conclusory averment that Hornyak was retained in the lawsuit as a "hostage" to force Bobrick to settle sufficient to support an inference that Hornyak was joined primarily for an improper purpose. In this regard, the Amended Complaint contains no allegations that Santana engaged in settlement negotiations in bad faith. Indeed, there are no averments pertaining to the course of settlement negotiations.[29]

Reinforcing the conclusion that Santana did not pervert the process primarily for an improper purpose is the conclusion of Judge Ross that the parallel litigation prosecuted in the Eastern District of New York was not brought as a competitive ploy or merely for harassment. Santana Prods., 2006 U.S. Dist. LEXIS 98045, at *46-*47. Dismissal of the abuse of process claim is further supported by the dismissal of the identical claim asserted on behalf of Vogel in the Pennsylvania court system. Faced with factual averments indistinguishable from those presented here, Judge Minora dismissed Vogel's abuse of process claim on preliminary objections, and a unanimous panel of the Superior Court

---

[29] This is not a case like Cruz v. Princeton Ins. Co., 950 A.2d 269 (Pa. 2008) (per curiam), in which the court concluded that there was a genuine dispute of fact material to the issue of improper purpose where defendants had filed a petition to compel the appointment of a guardian ad litem for a severely disabled child only after the child's parents had rejected defendants' settlement offer. There are no allegations that Santana took any action to compel a settlement after Bobrick had rejected a proposed compromise.

summarily affirmed that result.  Under these circumstances, dismissal of Plaintiffs' abuse of process claim is also warranted.[30]

## IV.  CONCLUSION

The parties expended millions of dollars in attorneys' fees in the Underlying Litigation. They undoubtedly have expended hundreds of thousands, if not millions, of dollars contesting the question of whether the defendants in the Underlying Litigation, Bobrick and its sales representatives, can recover their fees and expenses incurred in the Underlying Litigation.[31]  Courts from several jurisdictions at both the trial and appellate level have written extensive opinions finding that there was indeed substantive merit to the Underlying

---

[30] It would be incongruous to allow Plaintiffs' state law claims to proceed in federal court while the state courts dismissed identical claims brought on behalf of a party who is also named as a defendant in the Underlying Litigation (Vogel), whose status is indistinguishable from Hornyak, and who shares an economic unity of interest with Bobrick. "As a basic premise, federal courts presiding over diversity cases must apply the substantive law of the state whose laws govern the action." City of Philadelphia v. Lead Industries Ass'n, 994 F. 2d 112, 122 (3d Cir. 1993).  In this case, the Pennsylvania courts have clearly rejected the Dragonetti and abuse of process claims arising out of the identical factual scenario presented here.  It would be unpalatable to find that the state law claims presented here survive a motion to dismiss when the identical state law claims involving the same facts do not merit discovery in state court.  "Our role is to apply the current law of the appropriate jurisdiction, and leave it undisturbed." Id. at 123.  The current law of Pennsylvania is reflected in the trial and Superior Court's decisions in Vogel.  The respect commanded by the state court rulings in our federal system militates in favor of dismissal of Plaintiffs' claims in this action.

[31] Santana was awarded approximately $100,000 in fees that were incurred just in connection with Sylvester's appeal of the denial of its request for fees in the New York litigation.

37

Litigation. Bobrick's continued pursuit of actions against Santana, its officers and lawyers reflects a stubbornly myopic view of the nature of Santana's claims and the import of the evidence addressed in the Underlying Litigation.[32] There was real substance to Santana's action, and Santana's counsel conducted that litigation in a highly professional manner.

Twombly and Iqbal instruct that federal trial courts be cognizant of the enormous costs of complex commercial litigation when addressing motions to dismiss. Motions to dismiss must be granted where there is "no 'reasonably founded hope that the [discovery] process will reveal relevant evidence'" to establish a viable claim. Twombly, 550 U.S. at 559-60. This is such a case. Because it is clear that no viable Dragonetti or abuse of process claim may be pursued here, this action will be dismissed with prejudice. An appropriate Order follows.

s/ Thomas I. Vanaskie
Thomas I. Vanaskie
United States District Judge

---

[32] It is disappointing that the highly respected counsel who otherwise represented Bobrick so effectively refuses to acknowledge the obvious, even after being sanctioned nearly $100,000 for pursuing an appeal characterized as frivolous and disingenuous.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

THE BOBRICK CORPORATION,                    :
BOBRICK WASHROOM EQUIPMENT, INC.            :
THE HORNYAK GROUP, INC.                     :
                    Plaintiffs              :
                                            :
            v.                              :     3:CV-07-1521
                                            :     (JUDGE VANASKIE)
SANTANA PRODUCTS, INC., SANTANA             :
PRODUCTS LIQUIDATING TRUST,                 :
MICHAEL T. LYNCH, SR., MICHAEL T.           :
LYNCH, JR., JOHN A. CARNEY, JAMES           :
M. GAVIGAN, WILLIAM E.                      :
JACKSON, ESQ.                               :
                    Defendants              :


ORDER

NOW THIS 22nd DAY OF MARCH, 2010, for the reasons set forth in the foregoing

Memorandum, IT IS HEREBY ORDERED THAT:

1. Defendants' Joint Motion to Dismiss Amended Complaint (Dkt. Entry 112) is

GRANTED.

2. Plaintiffs' Amended Motion for Leave to File a Second Amended Complaint (Dkt.

Entry 163) is DENIED.

3. The Motion to Dismiss for Lack of Prosecution filed on behalf of Defendant William

E. Jackson (Dkt. Entry 179) is DISMISSED.

4. The Plaintiffs' Motion to Lift Stay (Dkt. Entry 187) is DENIED.

5. The Clerk of Court is directed to mark this matter CLOSED.


                                        s/ Thomas I. Vanaskie
                                        Thomas I. Vanaskie
                                        United States District Judge